COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Felton, Judges Elder and Humphreys
Argued at Richmond, Virginia


GORAN ANDELIC

                                                  MEMORANDUM OPINION[*] BY
v.        Record No. 0613-11-2              CHIEF JUDGE WALTER S. FELTON, JR.
                                                          MAY 15, 2012
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                   Paul M. Peatross, Jr., Judge Designate

          Charles L. Weber, Jr., for appellant.

          Rosemary V. Bourne, Assistant Attorney General (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellee.


        A jury convicted Goran Andelic ("appellant") of arson of an occupied dwelling in

violation of Code § 18.2-77.  On appeal, appellant contends the trial court erred in overruling his

motion to strike the Commonwealth's evidence as being insufficient to prove that the dwelling

was occupied at the time of the fire.  For the following reasons, we affirm the judgment of the

trial court.

                                    I.  BACKGROUND

        "'Where the issue is whether the evidence is sufficient, we view the evidence in the light

most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible

therefrom.'"  Baylor v. Commonwealth, 55 Va. App. 82, 84, 683 S.E.2d 843, 844 (2009)

(quoting Sandoval v. Commonwealth, 20 Va. App. 133, 135, 455 S.E.2d 730, 731 (1995)).

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In August 2009, appellant, a banquet server for Keswick Hall, began renting a room in a house located at 850 Black Cat Road ("the dwelling").[1]  On September 14, 2009, after numerous unexplained absences at work by appellant, the director of human resources ("director") at Keswick Hall told appellant that he had two weeks to move out of the dwelling.[2]  On September 17, 2009, appellant again failed to report to work.  Later that day, between 5:30 p.m. and 6:00 p.m., the director and another manager went to the dwelling and informed appellant that his employment with Keswick Hall was terminated.  The director told appellant that he needed to move out of the dwelling.  However, at appellant's request, she agreed to permit appellant to remain in the dwelling for an additional two days.  The director left the dwelling at approximately 6:15 p.m., and returned to Keswick Hall.  At 9:06 p.m., appellant purchased three gallons of gasoline at a gas station located approximately ten minutes from the dwelling.  A fire at the dwelling was reported to emergency services at approximately 9:20 p.m.  After his arrest for arson of the dwelling, appellant told a fellow inmate at the jail that he had burned down a $2.5 million home with gasoline because "he had worked for the people and the people was trying to get rid of [him]."[3]

At the conclusion of the Commonwealth's evidence, appellant moved "to strike the occupied element of the charge . . . so the [c]ourt would find that this was an unoccupied dwelling and the unoccupied dwelling is punishable as a Class 4 felony."  Appellant argued that the Commonwealth's evidence showed that, although he had been granted two more days to reside in the dwelling, he vacated the premises prior to the fire, taking his possessions with him,

---

[1] Keswick Hall is a historic hotel and banquet hall in Albemarle County.  The dwelling on Keswick Hall property is used to house foreign interns.  The dwelling had multiple bedrooms, a living room, and a kitchen.

[2] The director testified that she also feared for the safety of other potential occupants of the dwelling because two men repeatedly came to Keswick Hall saying that appellant owed them money.

[3] The dwelling was actually valued at $334,600.

he did not intend to return, and he was, therefore, permanently absent from the dwelling. The trial court overruled appellant's motion to strike the Commonwealth's evidence stating that it was doing so "because I think it's a factual determination for the jury whether [appellant] was temporarily absent or permanently absent."

Appellant testified in his defense. He told the jury that when he was terminated, he asked the director to give him two more days to reside in the dwelling, but that she denied his request. He stated that on the same night his employment was terminated, he packed his belongings in his car and left around 7:00 p.m. or 8:15 p.m.[4] He also testified that when he left the dwelling, he went to the North Berkshire Apartments[5] in Charlottesville, and thereafter left to purchase gas for his car. He further testified he did not start the fire that burned the dwelling.

Among other jury instructions, the trial court gave Instruction #13 that defined "occupied" as follows: "The term occupied does not require the physical presence of the occupant at the time of the arson, but means that the use of the dwelling is as a place of current habitation rather than a dwelling that is temporarily vacant." Appellant did not object to the granting of that instruction.[6] The jury found appellant guilty of arson of an occupied dwelling and fixed his punishment at imprisonment for seven years. Appellant "move[d] to set aside the

---

[4] The record provides no explanation for the hour and fifteen minute gap in his stated departure times.

[5] Appellant testified that even though he lived at the Keswick Hall dwelling, he also paid for and maintained an apartment at the North Berkshire Apartments. Other than his testimony, no other evidence established that he maintained an apartment at the North Berkshire Apartments.

[6] By *per curiam* order dated November 1, 2011, this Court denied that portion of appellant's petition for appeal asking us to consider his assertion, for the first time on appeal, that the trial court erred in granting Instruction #13, and further asking that we invoke the ends of justice, pursuant to Rule 5A:18, and hold that the trial court erred in granting jury Instruction #13.

jury verdict . . . as being contrary to the law" because "the evidence clearly established it was an unoccupied dwelling." The trial court denied appellant's motion to set aside the jury verdict.

## II. ANALYSIS

On appeal, appellant argues the trial court erred in ruling that whether the dwelling was occupied in the context of Code § 18.2-77 was a question of fact for the jury, and in overruling his motion to strike the Commonwealth's evidence as insufficient to prove the dwelling was occupied as a matter of law. We conclude from the record on appeal that the trial court did not err in instructing the jury that the issue of whether the dwelling was occupied was a question of fact for it to determine.

### A. Standard of Review

"When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732. Furthermore, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

> An appellate court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)) (emphasis in original). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (citation omitted and emphasis in original). Thus, when a jury has rendered its verdict, "it is not for this court to say that the evidence does or does not establish his guilt beyond a reasonable doubt because as

- 4 -

an original proposition it might have reached a different conclusion." Cobb v. Commonwealth, 152 Va. 941, 953, 146 S.E. 270, 274 (1929). Suffice it to say, an "appellate court is no substitute for a jury." Id.

Rushing v. Commonwealth, 58 Va. App. 594, 606, 712 S.E.2d 41, 47 (2011) (footnotes omitted).

### B. Arson of an Occupied Dwelling

Code § 18.2-77 provides:

> A. If any person maliciously (i) burns, or by use of any explosive device or substance destroys, in whole or in part, or causes to be burned or destroyed . . . any dwelling house . . . , he shall be guilty of a felony, punishable by imprisonment for life or for any period not less than five years and, subject to subdivision g of § 18.2-10, a fine of not more than $100,000. Any person who maliciously sets fire to anything . . . , by the burning whereof such occupied dwelling house . . . is burned shall be guilty of a violation of this subsection.
>
> B. Any such burning or destruction when the building . . . mentioned in subsection A is unoccupied, shall be punishable as a Class 4 felony.[7]

(Footnote added).

In Johnson v. Commonwealth, 18 Va. App. 441, 444 S.E.2d 559 (1994), this Court

addressed the meaning of the term "occupied" in the context of the burglary statute, Code

§ 18.2-92, and held that

> the phrase "while said dwelling is occupied" in Code § 18.2-92 is not an element of the crime requiring the physical presence of the occupant at the time of the unlawful entry. Rather, it is language intended by the legislature to emphasize the character of the use of the dwelling as a place of current habitation rather than a dwelling that is temporarily vacant.

---

[7] A Class 4 felony is punishable by imprisonment for a period of two years to ten years. Code § 18.2-10(d). We note that the jury fixed appellant's punishment at imprisonment for a term of seven years, well within the range of punishment for either arson of an unoccupied dwelling under Code § 18.2-77(B), a Class 4 felony, or arson of an occupied dwelling pursuant to Code § 18.2-77(A).

Id. at 447, 444 S.E.2d at 562.[8]  In Marable, we addressed the meaning of "occupied" for purposes of Code § 18.2-77, the arson statute at issue here, and noted that "[a]lthough Johnson involved an interpretation of Code § 18.2-92, a breaking and entering statute, we find no reason to distinguish between the two statutes."  Marable, 27 Va. App. at 513, 500 S.E.2d at 237.  We concluded that a dwelling is occupied "where the occupant or occupants are merely temporarily absent but continue to reside there."  Id.

> At common law, arson occurred even if the occupants of a dwelling were "temporarily absent at the time of (its) burning." State v. Gulley, 266 S.E.2d 8, 8 (N.C. Ct. App. 1980).  Thus, the burning of a dwelling that is "merely temporarily unoccupied" is arson.  Id.  A structure is "temporarily unoccupied" if it is "dedicated and intended for residential use, and . . . is not presently occupied as a person's habitation, but . . . has [not] been permanently abandoned nor vacant for a prolonged period of time."  State v. Green, 480 N.E.2d 1128, 1132 (Ohio Ct. App. 1984).

Davis v. Commonwealth, 16 Va. App. 6, 8, 427 S.E.2d 441, 442 (1993) (alterations in original).

The evidence presented to the jury proved that the dwelling was regularly inhabited by employees of Keswick Hall, including appellant.  It further proved that appellant was an inhabitant of the dwelling and that at the time of the termination of his employment at Keswick Hall, appellant requested and was granted permission by the director to inhabit the dwelling for an additional two days.  On the day his employment was terminated, appellant was at the dwelling at 6:15 p.m. when the director departed.  Appellant testified that he left the dwelling at either 7:00 p.m. or 8:15 p.m. with his belongings.  At 9:06 p.m. he purchased three gallons of

---

[8] Webster's Third New International Dictionary defines "occupancy" in part as "taking . . . possession of real property under a lease or tenancy at will."  Webster's Third New International Dictionary 1560 (2002).  Black's Law Dictionary describes "occupant" as "One who has possessory right in, or control over, certain property or premises."  Black's Law Dictionary 1184 (9th ed. 2009).  It also describes "occupancy" as "[t]he act, state, or condition of holding, possessing, or residing in or on something; actual possession, residence, or tenancy, esp. of a dwelling . . . ."  Id.

- 6 -

gasoline from a gas station located ten minutes away from the dwelling. Less than fifteen minutes later, the fire at the dwelling was reported. Viewed in the light most favorable to the Commonwealth, appellant was absent from the dwelling for approximately *one hour* prior to returning and setting it on fire, using gasoline as an accelerant. In finding that the dwelling retained its occupied status when appellant committed the arson, the jury rejected his hypothesis of innocence that he did not start the fire and did not occupy the dwelling when it was burned.

Based on our review of the record on appeal, we hold the trial court did not err in denying appellant's motion to strike the Commonwealth's evidence, and finding that its evidence was sufficient for the jury to conclude that at the time appellant set the fire, the dwelling was occupied within the meaning of Code § 18.2-77(A).

### III. CONCLUSION

For the foregoing reasons, we affirm appellant's conviction for arson of an occupied dwelling in violation of Code § 18.2-77(A).

<u>Affirmed.</u>