## Richmond

THE BOARD OF SUPERVISORS OF FAIRFAX COUNTY, ET AL.

V.

MILLER AND SMITH, INC.

June 12, 1981.

Record No. 790677.

Present: All the Justices.

*David T. Stitt, County Attorney (Frederic Lee Ruck, County Attorney; Edward J. Finnegan, Assistant County Attorney, on briefs), for appellants.*

*Robert A. Lawrence (Hazel, Beckhorn and Hanes, on brief), for appellee.*

*Amicus Curiae: C. F. Hicks; Martin, Hicks & Ingles, Ltd., for* Virginia Association of Counties, appellant.

THOMPSON, J., delivered the opinion of the Court.

The dispositive issue here is whether the building permit refund provisions of a Fairfax County ordinance have been superseded by regulations promulgated under the Uniform Statewide Building Code. For the reasons hereinafter set forth, we hold that the Fairfax County ordinance was in conflict with the statewide regulation and must therefore yield to it.

On June 10, 1976, Miller and Smith, Inc. (Miller and Smith), a housing construction firm located in Fairfax County, sought from the Board of Supervisors of Fairfax County (Fairfax County) a refund of the fees it had paid for eleven of 1,168 building permits acquired by it in 1973 and 1974 but never utilized. Fairfax County denied its request. Miller and Smith again asked in writing for a refund on July 8, 1977, this time for the fees paid on all 1,168 permits, totaling $42,516. After Fairfax County failed to take action, Miller and Smith, on September 9, 1977, filed for a declaratory judgment, asking the trial court to require Fairfax

County to refund the full amount. The trial court, sitting without a jury, heard the case on July 5, 1978.

In 1972, the General Assembly adopted Chapter 829 (Code §§ 36-97 through 36-119) directing and empowering the State Board of Housing to adopt and promulgate a Uniform Statewide Building Code (U.S.B.C.) which would supersede all local building codes and regulations. The adopted code, patterned after the Building Officials and Code Administration model codes (BOCA), will be referred to in the opinion as BOCA/U.S.B.C. The refund provision of BOCA/U.S.B.C. was worded in part:

> In the case of a revocation or abandonment or discontinuance of a building project, the volume of the work actually completed shall be computed and any excess fee for the incompleted work shall be returned to the permit holder.

BOCA/U.S.B.C. § 118.8.[1]

Prior to September 1, 1973, Fairfax County had its own building code, basically a codification of BOCA with some modifications. In adopting BOCA, Fairfax County modified the BOCA provision concerning refund of building permit fees to read in pertinent part:

> Any permit . . . under which no work is commenced, may be cancelled upon the application of the owner at any time within six (6) months from the date of issuance and the Board of Supervisors shall refund fifty percent of the fee paid for such permit.

Fairfax County Code § 6-5(g)(1961) as amended August 4, 1971.

BOCA/U.S.B.C. became effective September 1, 1973. Fairfax County amended its building code subsequent to this date, but did not change its original refund provision, continuing this provision as Fairfax County Code § 6-6(1), the alleged supersession of which is at issue in this case.

The trial court concluded that because BOCA/U.S.B.C. § 118.8 had been adopted by the State Board of Housing, the action of Fairfax County in adopting, in Fairfax County Code § 6-6(1), a different provision dealing with building permit refunds was invalid. The court thus computed the refund based on the amount of

---

[1] § 118.8 was deleted from BOCA/U.S.B.C. in 1978.

incompleted work without regard to the provisions of the local code.

## I. *Jurisdiction of Circuit Court.*

■ Fairfax County contends that the circuit court lacked jurisdiction of the claim because Miller and Smith did not follow the appeal procedures set forth in Code §§ 15.1-552, -553, and hence the bar of Code § 15.1-554 controls. *See Chesterfield County* v. *Town & Country Apartments,* 214 Va. 587, 203 S.E.2d 117 (1974). But the record clearly indicates that counsel for Miller and Smith, by letter dated July 8, 1977, and addressed to the Fairfax County Board and all of its officials charged with the enforcement of the building code, specifically requested the refunds with the listing of the projects involved. Approximately seven months later, the clerk of the Board of Supervisors of Fairfax County notified counsel for Miller and Smith that there was no evidence the refund claim was ever presented to the Board of Supervisors. We agree with the trial court that, within the meaning of Code § 15.1-553, Fairfax County had "refused or neglected to act upon the claim," and it is excepted from the bar of Code §§ 15.1-553 and -554. *Parker* v. *Prince William County,* 198 Va. 231, 93 S.E.2d 136 (1956).

■ Fairfax County argues further that it was a prerequisite to circuit court jurisdiction that administrative remedies under the building code and its regulations should first be exhausted. Code §§ 36-105, -114, -116, and -118, and § 127.1 of the Regulations.

Code § 36-105 provides that "no appeal to the State Building Code Technical Review Board shall lie prior to a final determination by the local Board of Building Code appeals." Code § 36-105 also provides that the local board's "duties and responsibilities shall be prescribed in the Building Code." The Building Code is defined in Code § 36-97(5) as the U.S.B.C.

The only provision in BOCA/U.S.B.C. providing for appeals to the local board is § 127.1. The first sentence of § 127.1 defines the scope of a local board review authority. It is any "decision of the building official refusing to grant a modification to the provisions of this code covering the *manner of construction or materials to be used*" in the erection, alteration, or repair of a building or structure. (Emphasis added.)

The second sentence of § 127.1 provides the situations in which an appeal will lie from a decision concerning "the manner of con-

struction or the materials to be used." These situations are (1) where the true intent of this Code or of the rules legally adopted thereunder has been incorrectly interpreted; (2) where the provisions of this Code do not fully apply; or (3) where an equally good or better form of construction can be used. This sentence does not provide additional areas of appeal, but rather sets out the situations wherein the local board of appeals may overturn the building official's decision as to the "manner of construction or materials to be used" if the local board of appeals finds one or more of the three situations to exist.

Section 127.1 therefore limits the jurisdiction of local boards of appeal to appeals from decisions of the building official as to the "manner of construction or materials to be used." The validity of a local ordinance such as Fairfax County Code § 6-6(1) is not a question within the scope of § 127.1, nor should it be. The local building official would not be qualified to make such a determination. Refunds are not covered by the § 127.1 administrative appeal procedure. Since this is the only statutory delegation of appellate jurisdiction to local boards of appeal, Miller and Smith's refund request was not a proper subject of this appeal process and, consequently, not a matter within the purview of the State Technical Review Board.

## II. *Is Fairfax County Code § 6-6(1) Superseded by State Regulation BOCA/U.S.B.C. § 118.8?*

The enabling legislation, Code § 36-98, the regulation promulgated thereunder, and the Fairfax County ordinance are set forth in the margin.[2]

---

[2] Code § 36-98. *State Board of Housing to promulgate Statewide Code; other codes and regulations superseded.*—The State Board of Housing is hereby directed and empowered to adopt and promulgate a Uniform Statewide Building Code. Such Building Code shall *supersede* the building codes and regulations of the *counties,* municipalities and State agencies. [Emphasis added.]

[BOCA/U.S.B.C.] § 118.8 *Refunds.* In the case of a revocation of a permit or abandonment of [sic] discontinuance of a building project, the volume of work actually completed shall be computed and any excess fee for the incompleted work shall be returned to the permit holder; except that all penalties that may have been imposed on the permit holder under the requirements of this code shall first be collected.

[Fairfax County Code] Section 6-6 GENERAL. (1) Any permit issued by the Building Official pursuant to the provisions of this Code, under which no work is commenced, may be cancelled upon the application of the owner at any time within six (6) months from the date of issuance and the Board of Supervisors shall refund fifty percent of the fee paid for

In *Board of Supervisors of Loudoun County, et al.* v. *Pumphrey,* 221 Va. 205, 206-07, 269 S.E.2d 361, 362 (1980), we said:

> Code § 1-13.17 . . . precludes a local governing body from enacting ordinances "inconsistent with" state law . . . . [A]n ordinance may not conflict with state law. *Hanbury* v. *Commonwealth,* 203 Va. 182, 185, 122 S.E.2d 911, 913 (1961); *Allen* v. *City of Norfolk,* 196 Va. 177, 180, 83 S.E.2d 397, 399 (1954).
>
> . . . .
>
> Code § 1-13.17 provides: "When the council or authorities of any city or town, or any corporation, board, or number of persons, are authorized to make ordinances, bylaws, rules, regulations or orders, it shall be understood that the same must not be inconsistent with the Constitution and laws of the United States or of this State."

On the same day, in *Tabler, etc.* v. *Supervisors, Fairfax County,* 221 Va. 200, 202, 269 S.E.2d 358, 359 (1980), we said: "As noted in several recent decisions, Virginia follows the Dillon Rule of strict construction concerning the legislative powers of local governing bodies . . . ."

Fairfax County argues that the power given under Code § 36-98 to adopt and promulgate a BOCA/U.S.B.C. does not include the authority to adopt administrative procedures for the code so adopted. In fact, they argue that Code § 36-99 explicating the code was limited to standards in the construction of buildings and structures, and that the provision for "procedures for the administration and enforcement of such standards" was not added until Acts 1977, c. 427, which was adopted subsequent to the events of this case. The argument then is that at the time BOCA/U.S.B.C. was promulgated, January 29, 1973, to be effective not later than September 1, 1973, the power to prescribe administrative standards and procedures did not then exist, and only came into existence by the express language of the 1977 amendment to Code § 36-99.

We reject this argument of Fairfax County. The enabling legislation, Code § 36-98, directed the State Board of Housing to adopt and promulgate a uniform statewide building code, and im-

---

such permit. Any permit issued pursuant to this Code shall expire and become null and void after the expiration of six (6) months if no work is commenced thereunder . . . .

plicit in this is the power to adopt administrative rules and procedures carrying out the building code. In *Portsmouth* v. *Virginia Railway and Power Company,* 141 Va. 54, 61, 126 S.E. 362, 364 (1925), we said:

[E]very power expressly granted, or fairly implied from the language used, or which is necessary to enable the Commission to exercise the powers expressly granted, should and must be accorded.

The 1977 amendment to Code § 36-99 was merely a reiteration of inherent powers possessed by the State Board of Housing.

Fairfax County seeks to bolster its case by invoking the rule of administrative construction. To do this it presented the testimony of Jack Allen Proctor, State Building Code Inspector, together with his letter of January 17, 1978, enclosing interpretations of §§ 118.7 and 118.8 of BOCA/U.S.B.C. by the Technical Review Board. In Proctor's testimony he said:

Q. If the State Board of Housing had no authority in these areas, how did these areas get into the Uniform Statewide Building Code?

A. The State Board of Housing erred when it adopted the BOCA Code. They just didn't go through and purge the sections they didn't have the authority to promulgate. You know they promulgated portions of Article One as advisory in nature for these areas that never had a building code before.

His letter stated that §§ 118.1-118.8 were not adopted by the State Board of Housing as part of the administrative procedures. The Technical Review Board concluded that the sections had not been adopted by the State Board of Housing, and therefore it lacked jurisdiction in the premises. Instead of a consistent administrative policy officially promulgated, we have nothing but confusion and inconsistencies in resolving this controversy. If the administrators themselves cannot agree on the interpretation, then their diverse views are of little value to the court. *Gomes* v. *City of Richmond,* 220 Va. 449, 453, 258 S.E.2d 582, 585 (1979).

### III. *Applicability of Grandfather Clause.*

■ Fairfax County makes an alternative argument that, even if BOCA/U.S.B.C. superseded the local ordinance, by Code § 36-103[3], the local building regulations within one year prior to September 1, 1973, had continuing vitality.

This position was not set forth in any of the pleadings and is not properly before the court. We recently reiterated this rule in *Landcraft Co., Inc.* v. *Kincaid,* 220 Va. 865, 870, 263 S.E.2d 419, 422 (1980), where we said: "[Courts] have no power to adjudicate issues which are not presented by the parties in their pleadings unless the parties voluntarily try an issue beyond the pleadings." *See also Ted Lansing Supply Company* v. *Royal Aluminum and Construction Corporation,* 221 Va. 1139, 1141, 277 S.E.2d 228, 229-30 (1981).

### IV. *Proffer of Proof.*

■ Fairfax County went to great lengths to describe the procedures used in application for, processing of, and issuance of the building permits. The time of employees of each department was carefully calculated in proportion to the salary to show the actual costs to the local government of the service it was providing. The trial court rejected the proffered evidence as irrelevant to the issue before it. The issue before the court was whether the state regulation superseded the local ordinance, and this did not involve any allocation of costs. Therefore the lower court was right in declining to consider it.

■ Fairfax County argues that because of the elaborate service provided on building permit applications, and the time and number of its employees involved, it is entitled to some consideration on a *quantum meruit* basis. But nothing in BOCA/U.S.B.C. regulation (§ 118.8) or the local ordinance so provides. At the trial, Fairfax County took the position that "work actually completed" and "for the incomplete work" had reference to the work of county employees in processing and issuing building permits. The

---

[3] Code § 36-103. *Buildings, etc., existing or projected before effective date of Code.*—Any building or structure, for which a building permit has been issued or on which construction has commenced, or for which working drawings have been prepared in the year prior to the effective date of the Building Code, shall remain subject to the building regulations in effect at the time of such issuance or commencement of construction.

trial court disagreed.[4] The phrases "work actually completed" and "incompleted work" obviously refer to "building project" mentioned immediately before. We agree with the court and affirm the judgment in that regard.

In conclusion, we hold that the State Board of Housing was authorized to adopt regulation § 118.8 of BOCA/U.S.B.C., that said regulation superseded the refund ordinance of Fairfax County, and that the Circuit Court of Fairfax County had jurisdiction to resolve the controversy. The judgment of the lower court will be

*Affirmed.*

---

[4] "THE COURT: [B]ut, anyway, there is no doubt in my mind that when they are talking about work here in 118.8, they're talking about work in the project, not work that the County's done in processing these applications. I don't think there is any way in the world you can read that in 118.8 . . . . [T]here's no doubt in my mind that the County is bound by 118.8 and there is nothing in that and no way in the world that you can read that what they're talking about insofar as computing the volume of work, that it is the volume of work that the County has done. They're talking about work that was done on the project and here it is *quite obvious that no work was ever done.* [Emphasis added.]

"MR. FINNEGAN: Your Honor, it's your ruling then that the cost for processing, reviewing, and approving the contract—

"THE COURT: That's right. In other words, the County is not entitled to any offset or any credit for the amount of work done on this. . . ."